SCHOTT, Judge
(dissenting).
From my examination of the record I am convinced that the trial court did not have jurisdiction over the children and the exercise of such jurisdiction under the circumstances of this case may have prevented the mother of these children from obtaining justice, and encourages chans in the orderly administration of justice as well as disrespect for the law and courts.
On October 15, 1971, Stephanie King initiated domestic proceedings against her husband, Frederic King, in the Supreme Court of New York, where they were both domiciled and residing at that time. These proceedings contain statements by both parties, bitterly attacking the behavior and character of each other, impuning each other’s moral conduct and reflecting upon each other’s suitability as custodian of the four children born of their marriage. The *555 proceedings terminated with an order signed by the court on February 25, 1972, awarding to Mrs. King the custody of the four children with visitation rights in favor of the father, and for the payment of $250 per week to Mrs. King as temporary alimony and support for the children.
In July, 1972, Mr. King moved to Jefferson Parish in connection with his taking a position in New Orleans, and shortly thereafter in the exercise of his visitation rights and with the approval of Mrs. King he brought his children to Louisiana for the celebration of a holiday. When this visit reached its planned conclusion King decided not to return the children and it became necessary for Mrs. King, accompanied by her mother, to come to Louisiana and by force return the four children to their domicile in New York.
On Friday, October 5, 1973, while King was in New York in the exercise of his visitation rights he obtained the cooperation of his four children, ages 12, 11 (twins) and 8, to board an airplane with him in New York and to return to his home in Jefferson Parish. This was done without knowledge or consent on the part of Mrs. King, and the four small children made their exit with no baggage or belongings other than the clothes which they were wearing. Shortly after their arrival in Jefferson Parish, on Saturday, October 6, 1973, Mr. King’s attorney arranged with the Probation Counselor for the Jefferson Parish Juvenile Probation Department to initiate an investigation concerning these children, upon informing him that these children were being denied their constitutional rights and were in need of the supervision of the court.
On October 9, 1973, the Chief Probation. Counselor filed a petition in behalf of the State and in the interest of the children on the jurisdictional allegations that “they are alleged to be neglected children in that their environment is injurious to their well-being. This Court has jurisdiction under the provisions of R.S. 13:1570A(2).” The petition prayed that formal jurisdiction be taken by the Juvenile Court. Thereupon the court issued an order awarding to King temporary custody of the children, effective October 7, 1973, “considering that an emergency exists and the Court being of the opinion that it is for the best interest of the minor children.” Mrs. King excepted to the jurisdiction of the court and a lengthy trial was held on November 26, 1973, resulting in a judgment, signed on January 28, 1974, declaring the four children to bei neglected children and awarding custody to their father. The only reasons assigned were “After a lengthy hearing, considering the testimony of all witnesses and particularly the testimony of the four King children, together with the pleadings and the evidence, the law and the evidence being in favor of Mr. Frederic King, petitioner.”
LSA-R.S. 13:1570 prescribes as follows:
“Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the Parish or who is found within the parish:
(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well-being; ... or who is otherwise without proper care, custody, or support. .
(2) Whose occupation, behavior, environment or associations are injurious to his welfare.” (Emphasis supplied)
It is apparent from this statute that for the court to have jurisdiction over these children they must be “found within the Parish” and on the basis of an evidentiary *556 hearing the court must find that at least one set of the circumstances spelled out in the statute exists. Because the statute does contemplate such an evidentiary hearing for the court to determine whether it has jurisdiction Mrs. King’s initial exception was properly overruled, but in my opinion after the testimony was heard the trial judge should have maintained her exception as a matter of law.
The words “found within the Parish” hardly seem to apply to the circumstances of the instant case where these children were brought to the State and thrust upon the jurisdiction of the court by trickery on the part of the father in collusion with his children. Had the evidence shown that any sort of an emergency existed so that the children were in immediate need of the protection of the State because of their condition when they arrived in Jefferson Parish it might be argued that the State had the obligation under the circumstances to take jurisdiction over these children, but it should be apparent from the resume of the evidence provided in the majority opinion that no such emergency existed and that these children were not in dire need of the protection of the State.
This Court in Smith v. Ford, 288 So.2d 71 (La.App. 4th Cir. 1974) held as follows:
“ . . . only when some acute exigency obliges the state to intervene for the immediate necessities of the child’s welfare, in what is ordinarily the province of the state of the child’s domicile.
“Jurisdiction to decide custody of foreign infants in a state unrelated to them except by their brief physical presence is not a jurisdiction of choice but one of necessity. It exists because humanity could not abide a court’s refusing to hear, because of jurisdictional technicalities, a child’s screams from torture or despair. But a statutory grant of such transient jurisdiction is not merely another choice of custody forum, available for the convenience of a spouse. Most certainly such jurisdiction cannot be construed or suffered to invite the spiriting away of children from their long-established home by a seldom-seen parent.”
The majority rejects this case as inappo-site because it involved a question of custody alone, while the instant case involves an inquiry by the Juvenile Court into the question of neglect of children, but in my opinion there is no valid distinction between the cases. The question is purely one of jurisdiction. In the cited case jurisdiction was claimed on the basis of LSA-C.C.P. Art. 10(5) as to “a proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state,” and in the instant case jurisdiction is claimed on the basis of the statute containing language which is synonymous. The same judicial restraint over the exercise of jurisdiction should be applied in both cases.
But in addition to my belief that the trial judge erred as a matter of law in maintaining jurisdiction after the trial, I also believe that there is manifest error in the factual determination he had to make so as to bring the case within the purview of LSA-R.S. 13:1570A.(1) or (2).
The trial consisted almost exclusively of the testimony of the four children, the elder three of whom repeated one another’s accusations against their mother as summarized by my colleagues in almost verbatim pattern. The record shows that these children did discuss among themselves and with their father and their attorney their testimony before and during the course of the trial. Their testimony far from being natural or spontaneous was carefully rehearsed and largely influenced by their father. On this "point, it is most significant that two social workers employed by the Jefferson Parish Department of Welfare testified that when they interviewed the four children in the presence of their father and the woman living in his house they were impressed by the fact that they were being encouraged by their father in their responses, and were making an effort to answer their questions in such a way as *557 would be acceptable or helpful to the father. The prevailing sentiment repeatedly expressed by the children was that they were unhappy with their mother and preferred to live with their father in Jefferson Parish. The only other witnesses who testified were the father, a pediatrician who examined the children, a psychiatrist who examined the children for IS minutes on October 6 and 20 minutes on October 26, and the social workers. The pediatrician found the children to be in good health and contributed nothing to the case on the issue of neglect. The psychiatrist could say only that the children were unhappy and preferred to be with their father, but significantly when he was asked whether he felt that the four children should stay with their father he answered “In the first place, I find it very difficult to comment on where the children should go because I don’t know both home environments and I don’t know them in detail.” Similarly, in answer to the question as to whether the King children were neglected one of the social workers said:
“I feel that we do not have enough information, we have not interviewed Mrs. King, we have only seen the children in their own home on one occasion, we were not complete, with our report, I do not feel that we have enough information to be able to give any kind of recommendation as to whether we feel these children are neglected or not.”
Thus, while these social workers declined to make a recommendation on the basis of the fact that they did not feel they had enough information, the trial judge made his determination without any more information than the social workers had at their disposal. The trial court did not obtain information from any agency in New York where the children were domiciled in spite of the fact that a proffered letter from the Department of Social Services of the State of New York over the signature of a senior case worker of that agency reported that the home of the children was adequate and that his investigation disclosed no evidence of neglect on the part of these children.
There was also much testimony by the children concerning Mrs. King’s living in concubinage with two different men and because the majority opinion highlights this testimony it is appropriate to note that Mr. King has living in his home a young woman whose husband sued her for divorce upon the ground of adultery with King and whom King testified he intended to marry. The children testified that they liked this woman and even referred to her as their mother. Since the trial judge awarded custody to King despite these circumstances I must assume that he afforded no weight to the evidence of Mrs. King’s loose conduct with her suitors.
The only conclusions supported by the testimony are that, 1) these children at the time of the trial and in the State of Louisiana were unhappy and 2) they preferred to live with their father because of conditions which exist in New York. But if these children were neglected that neglect necessarily occurred in New York and the record contains little if any evidence on this essential point. Had the case been tried in New York, a court could have availed itself of all pertinent information and a sound determination could have been made.
Before Mrs. King suffered her children to be taken away from her by Mr. King’s deceit and trickery she. had proceeded in an orderly fashion in the New York court and had obtained a valid, legal and subsisting court order awarding her custody. She then found herself in the position of having to travel to Louisiana, at her own expense, to convince a judge of a foreign jurisdiction that she was not neglecting her children. She did the best she could with her own testimony and that of her mother. They both denied the accusations of the children. But she was relegated to proceeding without the benefit of live testimony of friends, neighbors, relatives, physi *558 cians or even legitimate agencies of the State of New York who could have made an impartial investigation of the children’s circumstances at first hand and reported on it to the court. Under these circumstances it was most difficult for Mrs. King to obtain justice, whereas all parties could have done so had the matter been tried in New York where it belonged. In my opinion, the trial judge committed prejudicial error when he declined to relinquish jurisdiction after the evidence was presented.
Putting the stamp of approval on Mr. King’s behavior can only produce chaos in the orderly administration of justice. Given a couple who are bitterly antagonistic toward each other as the Kings have been and given the financial means of the one without custody to be able to fly the children around the country, he can flaunt the jurisdiction of the court where he first litigated the question of custody and try his case in another jurisdiction in the hope that he might convince the court that he now be awarded custody of his children. Had Mr. King lost his case he might very well have searched for still another jurisdiction which might have afforded him relief. I respectfully submit that my colleagues in the majority have chosen to ignore fundamental principles of comity and the giving of full faith and credit to the judgments and orders of our sister states which are designed to prevent chaos and confusion from undermining the administration of justice. The first and paramount consideration for us is the welfare of the children, but unless there is a showing that the children are in dire need of the protection of our state and our courts we should also be interested in maintaining orderly procedure and respect for the law and the decrees of courts. In the instant case, my colleagues have approved Mr. King’s scheme to flaunt the laws of the State of New York and to disregard the orders of the New York court without any showing on his part that the welfare of his children justified such action.
I respectfully dissent.